IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| SAM E. JONES,<br><br>    Plaintiff,<br><br>vs.<br><br>DEACONESS BILLINGS CLINIC;<br>NORTHERN ROCKIES KIDNEY<br>CENTER; DR. GREG MOCK; TERRY A.<br>HOUSINGER; and RANDALL G. PENTON,<br><br>    Defendants. | Cause No. CV 06-15-BLG-RFC-CSO<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATION OF UNITED STATES<br>MAGISTRATE JUDGE TO GRANT<br>DEFENDANTS' MOTION TO DISMISS |

Plaintiff Sam Jones originally filed this action on October 24, 2005, in the District of Arizona. The matter was transferred to this Court on February 7, 2006. Jones is proceeding pro se and in forma pauperis.

## I. Background

On August 17, 2006, Jones was ordered to show cause why his action should not be dismissed on the ground that the only form of relief he had requested in his Complaint was an Arizona venue and on the ground that he provided no facts in support of his claims for relief. See Order to Show Cause (Court's Doc. No. 5) at 2, ¶ II. On September 11, 2006, Jones responded by submitting his service copy of the Order to Show Cause and signing the signature page of the form amended complaint the Court

had provided.  See Pl.'s Resp. to Order (Court's Doc. No. 6) at 1.  On September 1, 2006, the Court issued another show-cause order, stating that Jones had failed to comply with the first show-cause order and extending his time to file an Amended Complaint.  See Second Order to Show Cause (Court's Doc. No. 7) at 2.  Jones filed his Amended Complaint on September 25, 2006. (Court's Doc. No. 8).  On July 25, 2007, the Court ordered Plaintiff's Amended Complaint to be served upon Defendants. (Court's Doc. No. 10).  Defendants filed an Answer on October 15, 2007 (Court's Doc. No. 19) and a Motion to Dismiss on December 17, 2007.  (Court's Doc. No. 25). Plaintiff filed a response on January 14, 2008, and a document entitled "Allegation Brief" on February 21, 2008. (Court's Doc. No. 30).  Defendants filed a Motion to Strike Plaintiff's Allegation Brief on March 4, 2008. (Court's Doc. No. 31).

The Court finds that Defendants' Motion to Dismiss is well-taken.

## II.  Standard applicable to Rule 12(b)(6) Motion to Dismiss

Defendants have filed their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, requesting that the Court dismiss this matter for failure to state a claim upon which relief can be granted.  In ruling on Defendants' Motion to Dismiss, review is limited to the contents of Plaintiff's Complaint.  Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  Plaintiff's factual allegations must be taken as true and construed in the light most favorable to Plaintiff.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of the claim entitling plaintiff to relief." Id. at 946. A complaint does not need to include detailed facts to survive a Rule 12(b)(6) motion to dismiss. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action. Id. at 1966. The plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence. In other words, the plaintiff must allege enough facts to state a claim for relief that is plausible on its face. Id. at 1974. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a plaintiff appears pro se, the court has an obligation to construe the complaint liberally. See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (same). "'A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976)); Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " Id. (quoting Noll v.

Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### III. Jones' Allegations

Jones' allegations are not always clear. The following is the Court's best effort at understanding what he is saying.

Jones alleges that, in April 2006,[1] Dr. Greg Mock refused to provide dialysis treatment, even though Jones had been advised to go to the emergency room by an investigator from the Denver Regional Office of the Department of Health and Human Services. See Am. Compl. (Court's Doc. No. 8) at 3, ¶ IV.A(1).

Jones also alleges that Dr. Mock "failed to show up at the emergency" and "wanted to dialysis in faulty fistula left arm swollen 1 yr. after surgery, would have cause death." Presumably this is the event that occurred on June 8, 2006, since Jones appears to allege that he received no treatment in April 2006. Jones also contends that he was taken out of his room in the general population at the dialysis center and placed in a separate room. He claims an unidentified woman told his girlfriend that she had

---

[1] The dates given in Plaintiff's Complaint are somewhat confusing. Plaintiff alleges in his Amended Complaint that the events at issue occurred in April and June 2006. However, Plaintiff's original Complaint is dated November 7, 2005, was filed on January 20, 2006, and states that Plaintiff had been domiciled in Arizona since June 2004. Furthermore, Plaintiff attached to his "Allegation Brief" a March 3, 2004, letter from Dr. Mock wherein Dr. Mock advised Plaintiff that "as a result of [plaintiff's] persistent refusal to follow Northern Rockies Kidney Center protocols and continuous statements about the lack of appropriate treatment by the physicians at Deaconess Billings Clinic, [Dr. Mock] would no longer provide [plaintiff] medical care." (Court's Doc. No. 30, voluminous exhibits). Plaintiff also attached a letter from the Department of Health and Human Services indicating that Plaintiff filed his Hill-Burton Act Complaint on April 17, 2004. Thus, it is possible that the events in question in this matter occurred in late 2003 and early 2004 as opposed to 2006.

been raped by an African-American man and was afraid to let Jones stay in the same area with other patients.[2]  He also claims that he was told not to speak while his dialysis was proceeding.  See id. at 3-4, ¶ IV.A(1)-(2).  Jones further alleges that the Billings Deaconess Clinic failed to give him heparin, resulting in blood clotting and less efficient dialysis.  Id. at 4, ¶ V; see also id. at 6.

For his relief, Jones requests compensatory damages and a transfer of the responsibility for enforcing the Hill-Burton Act from the State of Montana to the United States government.  Am. Compl. (Court's Doc. No. 8) at 4, ¶ VI.

**IV. Analysis**

Defendants have moved to dismiss on several different grounds.  First, they contend that Plaintiff is precluded from filing a malpractice action against Defendants because he did not make an application to the Montana Medical Legal Panel as required by [Montana Code Annotated § 27-6-701](#).  Second, they contend that Plaintiff has failed to state a claim against Dr. Terry A. Housinger and Randall G. Penton.  Finally, they contend that Plaintiff's claims under the Hill Burton Act fail to state a claim.

**A. Malpractice**

---

[2]Plaintiff has not specifically plead a racial discrimination claim.  To the extent he is attempting to do so with this factual allegation he has failed to name the woman who moved him and failed to allege that any of the named defendants were even aware of this incident.  Simply stated, Plaintiff has not connected this incident to his allegations of mistreatment and/or lack of treatment.  Given the vagueness of Plaintiff's allegations and his failure to connect the factual allegations to any defendant, the Court (and presumably Defendants as racial discrimination was not addressed in their motion to dismiss) have not considered a racial discrimination claim in this case.

Defendants argue that Plaintiff failed to have a decision rendered by the Montana Medical Legal Panel prior to instituting this action for medical malpractice.  Pursuant to Montana Code Annotated § 27-6-701 (2007), "[n]o malpractice claim may be filed in any court against a health care provider before an application is made to the panel and its decision is rendered." [3]

In analyzing state law claims, federal courts must apply state law to resolve substantive issues, but apply federal law to resolve procedural issues.  Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  The required exhaustion of the Montana Medical Legal Panel is a substantive provision which under Erie this Court is bound to follow.  "The failure to exhaust administrative remedies . . . is . . . fatal in an action begun in federal court."  Sandhill Motors, Inc. v. American Motors Sales Corp., 667 F.2d 1112, 1115 (4th Cir. 1981); see also Truck Ins. Exchange v. Tetzlaff, 683 F.Supp. 223 (D.Nev. 1998) (holding that Nevada's rule requiring medical malpractice

---

[3] Defendants argue that this Court is without jurisdiction to hear Plaintiff's malpractice claims pursuant to Schmitz v. Vasquez, 292 Mont. 164, 168,  970 P.2d 1039, 1041 (Mont. 1998).  State law, however, cannot control or limit the jurisdiction of the federal courts.  Begay v. Kerr-McGee Corp., 682 F.2d 1311, 1315 (9th Cir. 1982). "The Erie doctrine does not extend to matters of jurisdiction or, generally, to matters of procedure . . ..   Erie requires that the federal court grant or withhold relief as the state courts would.  It does not require relegation of the diversity jurisdiction to the mercies of the legislatures of fifty separate states." Id. at 1316 (quoting Markham v. City of Newport News, 292 F.2d 711, 718 (4th Cir. 1961).  This Court has jurisdiction over Plaintiff's malpractice claims based both on supplemental jurisdiction pursuant to 28 U.S.C. §1367 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Regardless, the choice of law analysis is the same.  Bass v. First Pacific Networks, Inc., 219 F.3d 1052, 1055 n. 2 (9th Cir. 2000)("a federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.")

claims to be filed first with the screening panel applies in federal diversity cases); cf. Wray v. Gregory, 61 F.3d 1414 (1995)(holding that Nevada rules regarding admissibility of findings of medical screening panel rather than Federal Rules of Evidence controlled). Therefore, the requirement under Mont. Code Ann. § 27-6-701 that before filing a malpractice claim a Plaintiff must obtain a decision from the Montana Medical Legal Panel, is applicable in this case.

Plaintiff does not dispute that he failed to obtain a decision from the Montana Medical Legal Panel prior to instituting this action. Accordingly, Plaintiff's malpractice claims should be dismissed for failure to comply with Mont. Code Ann. § 27-6-701.

**B.  Defendants Terry A. Housinger and Randall G. Penton**

Defendants argue that Plaintiff has alleged neither a cognizable legal theory nor a sufficient factual predicate against Defendants Housinger and Penton. Plaintiff identified Defendant Housinger as a general surgeon at Deaconess Billings Clinic and Penton as the director of risk management and patient relations at Deaconess Billings Clinic. Plaintiff does not allege any specific act or omission against these two individual Defendants. While the Court has considered allowing Plaintiff leave to amend, given that Plaintiff's substantive grounds for relief are being recommended for dismissal, the Court deems that leave to amend in this situation would be futile.

**C. Hill-Burton**

"The Hill-Burton Act provides federal subsidization for the construction of private nonprofit hospital facilities pursuant to a federally-approved state plan." Geneva

Towers Tenants Organization v. Federated Mortgage, 504 F.2d 483, 488 n.9 (9th Cir. 1974). "In exchange for grant monies, facilities were required to give assurances to provide a reasonable volume of uncompensated indigent care to the community." Flagstaff Med. Ctr. v. Sullivan, 962 F.2d 879, 882 (9th Cir. 1992); see also 42 U.S.C. §§ 291, et. seq.; 42 C.F.R. §§ 124.501(a), 124.502(e).

Title VI of the Civil Rights Act of 1964 "provides that no person shall, on the grounds of race, color or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 C.F.R. § 124.9(a). Title VI is applicable to facilities receiving grants made under the Hill-Burton Act. Id. A person may file a complaint in the Office of the Regional Health Administrator for the region in which the facility is located. Id. § 124.606(a)(2)(i). If the Secretary of Health and Human Services dismisses a complaint or the Attorney General of the United States has not brought a compliance action within six months of the filing of the complaint in the regional office, "the person filing it may bring a private action to effectuate compliance with the assurance," id. § 124.606(a)(4), to provide a reasonable volume of medical care to indigent persons. See also 42 U.S.C. § 300s-6. Both prospective and retrospective forms of relief, such as "repayment of amounts improperly collected from persons eligible to receive uncompensated services," Flagstaff Med. Ctr., 962 F.2d at 888 (internal brackets omitted), are available.

Compliance with the Act is determined at the level of the facility's policies and

practices, not in the details of one particular case. For example, "[a] facility is out of compliance with the community service assurance if it uses an admission policy that has the effect of excluding persons on a ground other than those permitted." 42 C.F.R. § 124.603(d). Examples of such noncompliance arise if the facility has a policy of admitting only patients who are referred by physicians with staff privileges and has no policy accommodating persons who do not have a private physician; if few or none of the physicians with staff privileges in the facility or in a particular department will treat patients on medicaid; or if an advance deposit is required as a condition of admission to the hospital. Id. § 603(d)(1)-(3). See also, e.g., Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1184-85 (10th Cir. 1975) (plaintiff stated claim under Hill-Burton Act where hospital board adopted policy of transferring Navajo patients who presented at emergency room without life-endangering condition to public health service hospital thirty miles away).

The Court first notes that Defendants are correct that the Hill-Burton Act does not apply to individuals, as discussed above. Thus, the Court will address Plaintiff's Hill-Burton Act claims as they apply to the medical facilities named in his Amended Complaint and will assume, for present purposes, that Billings Deaconess and the Northern Rockies Kidney Center accepted Hill-Burton funds and are bound by the terms of its regulatory scheme.

However, Plaintiff has only alleged inappropriate treatment by one physician at Billings Deaconess and/or at the Northern Rockies Kidney Center. The Hill-Burton Act

has nothing to say about the quality of care received by an individual at a particular hospital.  The Act guarantees access to health care.  Plaintiff does not allege that he was denied access to care at Billings Deaconess or the Northern Rockies Kidney Center.  In fact, he discussed the care he received (albeit inadequate in his opinion) and provided copies of medical records from Deaconness demonstrating that he had received medical treatment.  The gist of Plaintiff's Amended Complaint is that one doctor did not treat him in a medically appropriate manner.  This is insufficient to state a claim under the Hill-Burton Act.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Defendants' Motion to Strike Plaintiff's Allegation Brief (Court's Doc. No. 31) is **DENIED AS MOOT.**

2. The Court's Scheduling Order of October 17, 2007 (Court's Doc. No. 22) is **VACATED**.

Further, the Court issues the following:

## RECOMMENDATION

Defendants' Motion to Dismiss (Court's Doc. No. 25) should be **GRANTED** and Plaintiff's Complaint (Court's Doc. No. 4-2) and Amended Complaint (Court's Doc. No. 8) should be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim on which relief may be granted.

The Clerk of Court should be directed to close this action and have the docket

reflect that the Court certifies pursuant to Rule 24(a)(3)(1) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Plaintiff's claims are so frivolous that no reasonable person could suppose that an appeal would have merit.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to [28 U.S.C. § 636(b)(1)](), the parties may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A DISMISSAL OF THIS CAUSE OF ACTION WITHOUT FURTHER NOTICE.**

DATED this 8th day of May, 2008.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge